BUTLER (BIRCH v.). See Case No. 1,425.

BUTLER (BRITTON v.). See Cases Nos. 1,-903 and 1,904.

BUTLER (BROADWELL v.). See Case No. 1,910.

BUTLER (BUTTON v.). See Case No. 1,-903.

BUTLER (CONKLING v.). See Case No. 3,-100.

---

## Case No. 2,238.

### BUTLER et al. v. DUVALL.

[3 Cranch, C. C. 611.][1]

Circuit Court, District of Columbia. May Term, 1829.

SLAVES—PETITION FOR FREEDOM—AMENDMENTS—PLACE OF TRIAL.

1. The object of the 21st section of the Maryland act of 1796, c. 67, which enacts that petitions for freedom shall be commenced and tried only in the county where the petitioner shall reside, under the direction of his master, seems to have been to prevent the filing of such petitions in the general court, and to confine the original jurisdiction, in such cases, to the county courts: not to the county in which the master resides, but to the county in which the petitioner resides, under the direction of his master. It seems that this section is applicable only to persons claimed as slaves by residents of Maryland.

2. So far as the object of this section is to designate which of the county courts of Maryland should have jurisdiction, it is not applicable to this county, as there is only one county in the district to which the laws of Maryland can be applied; the whole of the territory ceded by Maryland to the United States being contained in the county of Washington.

3. The right to petition for freedom is not for the first time given by that statute. It existed long before, and was in daily use at the time of passing the act of 1796.

4. A petition for freedom is not a local action. The right is personal, and accompanies the person wherever he goes.

5. The remedy is not confined to the courts of Maryland; nor is it necessary that the right to freedom should have accrued under the law of Maryland, nor in the county of Washington.

6. A petition for freedom is an action quasi in forma pauperis; and the court ought to see that the petitioner is not entrapped in the subtleties of special pleading; and for that purpose will permit repeated amendments, especially after the other party has amended his pleadings.

The petition for freedom, in this case, stated that the petitioners, Thomas Butler, his wife Matilda, their three children, Airey, Reason, and Sally, and their two grandchildren, Lydia and Eliza, were entitled to their freedom, but were held in a state of slavery by the defendant, Gabriel Duvall, contrary to law, and that they were about to be sold out of this district to foreign purchasers.

Mr. Duvall, in proper person, pleaded to the jurisdiction of this court as follows: And the said Gabriel Duvall, in his proper person, comes and says that the circuit court of the District of Columbia, here, ought not, as he humbly conceives, to have cognizance of the petition aforesaid, because he says, that ever since the first institution of the said court, here, by the statute in such case provided, and passed by the legislature of the state of Maryland, at the November session, 1796, of the general assembly of the said state, and ever since the said session remaining unrepealed and in full force and operation within the said state, and ever since the 27th day of February, 1801, adopted, and in full force and operation within the county of Washington aforesaid, by force of the act of congress in such case provided [2 Stat. 105], no petition for freedom can be commenced or tried in any place or jurisdiction, but in the county where the petitioner or petitioners bringing such petition, shall, at the time of bringing such petition, reside, under the direction of his, her, or their master, mistress, or owner; that the said Gabriel Duvall, at the time of the commencement of the said petition, always before, and ever since was, and yet is, a citizen of the said state of Maryland, and actually settled and resident in the county of Prince George's in the said state, and not in the county of Washington aforesaid, or elsewhere in the District of Columbia aforesaid; and that during all the time and times aforesaid, the said petitioners, and each and every of them, did and yet do and does reside in the said county of Prince George's and state aforesaid, under the direction of the said Gabriel Duvall, then and during all the time and times aforesaid, being the master and owner of the said petitioners, and each and every of them, there, as his servants and slaves, and not in the county of Washington aforesaid, or elsewhere in the District of Columbia aforesaid, under the direction of the said Gabriel; and that the said petition, during all the time and times aforesaid, has

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

been and yet is pleadable, and might and ought to have been brought, commenced, and tried before the court of the said county of Prince George's only, and not here in the circuit court of the district aforesaid, or elsewhere in the said district: And this he is ready to verify; wherefore, since the said petition is brought for the recovery of the freedom of the said petitioners, so residing in the county of Prince George's aforesaid, under the direction of their said master and owner, the said Gabriel prays judgment if the said circuit court of the District of Columbia here will or ought to have further cognizance of the petition aforesaid.

This plea was supported by the affidavit of Mr. Duvall, as to the facts therein stated, and a denial of the facts stated in the petition, that he was about to sell the petitioners out of the district to foreign purchasers. To this plea the petitioners replied, that this court ought not to be precluded from taking cognizance of the petition, because, by way of replication they say that before and at the time of filing their said petition, the petitioners were here present residing within the jurisdiction of this court in their own proper persons, in Washington county aforesaid; without this, that at the time and times aforesaid the said petitioners, or any of them, did and do reside in the said county of Prince George's and state aforesaid, under the direction of the said Gabriel, then and during the time and times aforesaid, being the master and owner of the said petitioners, and of each and every of them as alleged in said plea; and of this they put themselves upon the country. To this replication there was a special demurrer: 1st. Because, although the petitioners have denied that at the time of filing their petition, they were residing in Prince George's county, under the direction of their said master, and have averred that they were here personally at that time, yet they have not averred that they were here under the direction of their master; without which this court has no jurisdiction of the cause. 2d. Because the said replication is informal, insufficient, &c. The 21st section of the act of Maryland, 1796, c. 67, upon which the plea is founded, is in these words, "And be it enacted, That no petition or petitions for freedom shall hereafter originate in the general court of either shore; but shall commence and be tried only in the county where such petitioner or petitioners shall reside under the direction of his, her, or their master, mistress, or owner; and the court of the county where such petition or petitions shall be preferred, shall have full power and authority to issue process against such master, mistress, or owner for the purpose of compelling his or her appearance, directed to the sheriff of the county where such person or persons shall reside, and such sheriff shall serve and return such process in the same manner as if issued by the county court of his county; and in case of neglect or delay in such sheriff to execute and return such process, he may be fined by the court issuing such process."

Mr. Jones and C. C. Lee contended, that the remedy by petition was local, and confined to the state which gave it, and to the particular case mentioned in the statute; to wit, of a Maryland slave petitioning against a Maryland master, for a cause of freedom acquired or existing under the laws of Maryland; and if the Maryland law of 1796 is to be considered as continuing in force in this county of the district after its separation from the state of Maryland, or as reënacted by congress on the 27th of February, 1801, and to be so modified in its construction as to fit it to the circumstances of this county, then the case must be that of a slave residing here under the direction of the master, also residing here. The slave must have been voluntarily brought to this county by the master; otherwise he cannot be considered as residing here under the direction of his master. If the Maryland statute is adopted, the locality of the action is adopted also.

Mr. Key, contra. If the action is local under the Maryland statute, it is only local as to the several counties in that state; but as there is only one county in this district in which the Maryland laws have been adopted, the question of locality under the 21st section of the act of 1796, cannot arise here. If Mr. Duvall had been sued upon a promissory note, or in any other transitory action, he might as well plead the act of Maryland, which provides that no man shall be sued out of the county in which he resides. The act of 1796, does not give the right to petition for freedom; it existed long before.

Mr. Jones, in reply. No state courts have jurisdiction of a right to freedom acquired under the laws of another state. It is exclusively within the cognizance of the state in which the right was acquired. The law which forbids the suing of a man out of his own county is applicable to the remedy; but the act of 1796 relates to the right of action. It is a law purely of state policy. The petitioner must be here held in bondage; the wrong must be done here, the right must accrue here; a petition for freedom can only be maintained here against a person resident here, by a petitioner residing here. A colored man is prima facie a slave; he can, therefore, only sue in the mode given by statute. The act, in effect, says, that no colored person shall be permitted to sue, unless he reside here under the direction of his master, a resident of the district. The remedy and the jurisdiction are peculiar; they are applicable only to Maryland negroes.

CRANCH, Chief Judge (nem. con.). The

object of the 21st section of the Maryland act of 1796, c. 67, seems to have been to prevent the filing of petitions for freedom in the general court, and to confine the original jurisdiction, in such cases, to the county courts; but not to the court of the county in which the master should reside; for the act provides expressly for the case of a petition filed in one county against a master residing in another county, by authorizing the court of the county in which the petition is preferred, to issue process to compel the appearance of the master, directed to the sheriff of the county in which the master resides; which the sheriff is to serve and return as if issued by the court of his own county. In whatever county the petitioner might be, if he was under the control of his master, he might be said to be residing in that county under the direction of his master. If he were taken up as a runaway, and confined in the county jail, by authority of his master, he would be residing there under the direction of his master, and might there petition for his freedom. But it seems to us that the legislature contemplated only such colored people as should be claimed as slaves by residents of Maryland. If a colored person, born free in Maryland, but held as a slave in Virginia, should escape into Maryland, in what county in Maryland could he be said to be residing under the direction of his master? Yet if he were taken up in Maryland as a runaway, we presume the courts of that state would not refuse to hear his petition.

If the object of the act was to ascertain which of the county courts should have jurisdiction of the cause, that object was only applicable to the jurisdiction of the county courts of Maryland; and it could not be contended that, if the master resided in a county of Virginia, the law of Maryland would give jurisdiction to the county courts of Virginia; nor would a Maryland court be deprived of its jurisdiction, by the plea that the petitioner was residing in Virginia, under the direction of his master; much less would it be deprived of its jurisdiction by a law of Virginia, which should authorize a person, holden in slavery, to sue for his freedom in that county only in which his master should reside. The law of Maryland has been adopted as the law of this part of the district,—of this county only; and is to be considered as if enacted here, totidem verbis, mutatis mutandis. In such case, it can operate only upon such counties as may be formed out of this part of the district; and, as its object in Maryland was only to designate the courts of the state which should have jurisdiction of such causes, it has here no subject to operate upon, inasmuch as we have only one county. It is a law not applicable, in that respect, to the present condition of this part of the district; and, therefore, was either not adopted, or is wholly inoperative. We consider the negative averment in the defendant's plea, contained in the words—"And not in the county of Washing-ton aforesaid, or elsewhere in the District of Columbia aforesaid, under the direction of the said Gabriel," as an immaterial averment; for those words, "under the direction of the said Gabriel," qualify or modify the whole sentence, and spoil what we should, without them, consider as a very material, and, indeed, the only material averment in the plea. For if the petitioners were not here at the time of filing their petition, but were residing with their master in Prince George's county, in Maryland, this court has no jurisdiction of the cause. The plea does not deny that they were then residing here, but only that they were not residing here under the direction of their master; which is a negative pregnant with this affirmative, that they were residing here. If the petitioners were, at the time of filing their petition, residing here, and holden in slavery by the defendant, we think this court had jurisdiction; and it is certain that this court has exercised jurisdiction in many such cases. This is the first case, however, in which there has been a plea to the jurisdiction, founded on the twenty-first section of the act of 1796, c. 67. The fact stated in the plea, that the petitioners were always residing in Prince George's county in Maryland, under the direction of their master, is only an argumentative denial that they were here at the time of filing their petition; which is bad upon demurrer. And, if they were not then here, it is not material where they were. The averment, therefore, without denying their residence here, is an immaterial averment. Both the affirmative and negative averments, therefore, being immaterial, the plea is bad, and judgment on the demurrer must be against the defendant, who has committed the first fault in the pleadings.

It has been said, in argument, that the remedy by petition for freedom is given by the statute of 1796, and must be pursued strictly, according to the statute, and can only be used by those who come within its words; namely, persons residing in the county, under the direction of their masters, &c. But the remedy is not given by that statute. It existed long before, and was in daily use at the time of passing the act of 1796. That act only takes away the jurisdiction from certain courts; and does not deprive any person of a remedy which he before had, if he pursues it in the proper court. There is no reason to suppose, that the legislature intended altogether to deprive any class of persons of the protection of the laws. There is no statute which expressly gives to a person, held in slavery, a right to sue for his freedom. The remedy was probably adopted in analogy to that given "by way of petition," in cases of complaints between masters and servants, under the thirtieth and thirty-first sections of the act of 1715, c. 44, and was probably in use from that time until the passing of the act of 1796. Nor can the action, or the cause of action,

be considered as local. Wherever the master exercises his power over the supposed slave, there the right of action exists. It is, in its nature, strictly personal. It is suggested, also, that, as the right depends upon the law of Maryland, it can be tried only in the courts of Maryland. But there is no foundation for such a doctrine. Personal rights, acquired by the laws of Maryland, follow the person everywhere, unless they are such as, in their nature, cannot be enjoyed elsewhere. It is said, also, that the twenty-first section of the act of 1796 regards Maryland negroes only. This is probably true. But that section is restrictive only, and therefore restrains only Maryland negroes from suing in certain courts; so that if it be adopted as the law here, it would only restrain negroes resident in this part of the district, and only in regard to their choice of the tribunal, in case there were more than one, in this part of the district. It is true, as alleged in argument, that the injury of which the petitioners complain must be an injury committed here. There must be a holding in slavery here, to give this court jurisdiction; but it is not true that this court has only jurisdiction of a right of freedom which accrued here. If the defendant has a right to hold the petitioner in slavery in Maryland, by the laws of Maryland, he has a right to hold him here, unless the petitioner has acquired a new right to his freedom. So if the petitioner acquired a right to freedom in Maryland, he is free here.

The motion of the petitioners, to amend their replication a second time, was objected to as unreasonable, inasmuch as a judgment against them upon this demurrer would only remit them to their proper tribunal, that is, the county court of Prince George's county, in Maryland. The petitioners sue quasi in forma pauperis, and the court ought to see that they are not entrapped in the subtleties of special pleading. If this court has jurisdiction of their cause, it ought to exercise it; if it has not, it will not usurp it. If the court had given judgment against the petitioners, upon the pleadings, as they stood before the amendment, and should afterwards have seen that they could be so amended, consistently with the truth of their case, as to give jurisdiction to this court, we presume it would have permitted the amendment to be made; especially if it should have appeared, as was probably the case, that the defendant had amended his plea after the first replication was filed. The amendment of the replication, however, does not alter the opinion of the court as to the insufficiency of the plea.

The defendant, afterwards, by leave of the court, withdrew his demurrer to the replication, and the cause, at a subsequent term, was tried upon its merits, and verdict rendered for the petitioners. No writ of error was taken out.